## GETMAN and others *vs.* A. & C. GETMAN.

Where real estate was sold upon execution, and the purchaser at the sheriff's sale sold his bid to two other persons, who advanced the money therefor upon an agreement between them and the wife of the judgment debtor, that her children should have six years to refund the purchase money and interest, and to have a conveyance of the property; *Held* that this was a mere agreement with the mother to sell the property to her children, at any time within the six years, for the purchase money and interest; and that as there was no agreement on the part of the mother, or the children, to take the property and pay for it within that time, it was an agreement without any consideration to support it, and was therefore invalid.

*Held also*, that it was an agreement which required to be in writing, within the statute of frauds, even if there had been a sufficient consideration to support it.

To constitute a resulting trust in real estate, it is necessary that the consideration money, upon the purchase, should have belonged to the cestui que trust, or that it should have been advanced by some other person as a loan to him, or that it should have been advanced as a gift to him or for his benefit.

Getman *v.* Getman.

THIS was an appeal from a decree of the vice chancellor of the fourth circuit, dismissing the complainants' bill, with costs.

In 1831, G. T. Getman was the owner of a farm in the Stone Arabia patent in the county of Montgomery; and on the 26th of June in that year, he and his wife mortgaged the premises to S. Cogswell, to secure the payment of about $400 in two years, with annual interest. In December, 1824, they gave a second bond and mortgage upon the premises to the defendants, Adam Getman and Christopher Getman, to secure the payment of about $200 and interest, in November, 1826. The first of these mortgages came to the defendant, A. Getman, by assignment, in March, 1825. In April, 1825, John T. Getman recovered a judgment in the supreme court against G. T. Getman, for about $750, and an execution was issued thereon; under which the farm was sold by the sheriff, on the 9th of July, 1825, and was purchased by N. N. Van Alstyne for $371. Three days after the sale, the defendants A. & C. Getman, purchased the interest of Van Alstyne in the premises; and he directed the sheriff to deliver the deed to them, if the premises should not be redeemed. And in October, 1826, the sheriff conveyed the premises to them. Robert Getman, a son of the former owner, afterwards rented the premises of the defendants, and continued in possession thereof, as such tenant, for one year from the first of April, 1827. The defendant Christopher Getman, in April, 1827, conveyed all his interest in the premises, and in the junior bond and mortgage thereon, to the defendant Adam Getman; and he never afterwards had any interest therein. Robert Getman continued the tenant of the latter from year to year, until 1830; when he gave up the possession to the defendant A. Getman, and relinquished, under his hand and seal, all claim upon the premises. At the time of the sale by the sheriff, G. T. Getman had four sons and three daughters; two of which daughters were then married, and the other married subsequently, but before she was twenty-one years of age. The father was then very intemperate, and continued so until the time of his death in 1835.

In May, 1839, the complainants, all of the children of G. T. Getman except Robert, filed their bill in this cause, stating

Getman *v.* Getman.

among other things that on the 12th of July 1825, three days after the sale of the farm by the sheriff, the defendant Adam Getman called upon the wife of A. T. Getman and proposed, on behalf of himself and his brother, the other defendant, to advance the money to Van Alstyne for his bid, to prevent the property from being taken from her children, by the sheriff's sale, and to give them six years to repay the money; that she assented to that arrangement, and the same was communicated to Van Alstyne, who also assented thereto, and that his sole inducement for yielding such assent was to benefit the complainants; the amount of the bid being much less than the value of the farm; and that Van Alstyne accepted the amount of his bid from the defendants and authorized the sheriff to give them the deed of the premises pursuant to that agreement and arrangement; that in April, 1828 or 1829, C. Getman, one of the complainants, applied to the defendant A. Getman, and offered to pay him all his fair demands upon the premises, and requested him to release the right which he had acquired under the sheriff's deed, and to account for the rents and profits of the premises; which he refused to comply with in any way, but continued to retain possession of the property, in violation of such agreement. The complainants therefore prayed for an account of the rents and profits of the premises, and that the same might be applied to the payment of what was due upon the mortgages, and upon the amount of the bid at the sheriff's sale; and that the balance, if any, might be paid to the complainants, and that they might be permitted to redeem the premises and to have a conveyance thereof; they being willing and offering to pay any balance which might be found due the defendants, beyond the amount of the rents and profits received by them. The defendant C. Getman put in an answer, denying any agreement on his part, or in his behalf, according to his belief, to purchase the interest of Van Alstyne in any way in trust or for the benefit of the complainants; admitting that he and his brother purchased the right of Van Alstyne and subsequently obtained a deed therefor from the sheriff, and that he afterwards conveyed all his interest in the premises to Adam Getman, as stated in the com-

Getman *v.* Getman.

plainants' bill. He therefore disclaimed any interest in the premises. Adam Getman, the other defendant, denied that any such arrangement or agreement was made by him with the mother of the complainants, as was alleged in the bill, or that information of any such agreement or arrangement was communicated to the defendant C. Getman, or to Van Alstyne; and that the only agreement that was made with or in favor of any of the children of G. T. Getman, was with Robert Getman, and for his benefit solely; and that his claim under that agreement was relinquished to the defendant in 1830. The cause was heard upon pleadings and proofs before the vice chancellor, who dismissed the bill as to both defendants, with costs.

The following opinion was delivered by the vice chancellor:

WILLARD, V. C. The primary object of this bill is to compel the specific execution of an agreement, alleged to have been made by the defendant, on the 12th July, 1825, relative to the conveyance, by the defendants to the complainants, of a certain farm in the county of Montgomery. From the pleadings it appears that previous to, and on the 4th of April, 1825, one George T. Getman was seised of the premises in question in fee, and being so seised, a judgment was on that day obtained against him in the supreme court, in favor of one John T. Getman, for about $755,53 debt, and $17,10 costs; that on the 6th April, 1825, an execution was issued thereon to the sheriff of Montgomery county, who, by virtue thereof, on the 9th July, 1825, sold the premises in question at public vendue, and the same were purchased by Van Alstyne, for $371, being the highest sum bid.

The complainants and one Robert Getman, who is not a party, are the seven children and only heirs of the judgment debtor, George T. Getman; but as the latter did not depart this life until 1835, neither of the complainants, or the said Robert, had any right to redeem the premises from the purchaser at said sale. That right remained in the judgment debtor, or his grantee, or some creditor of his having a lien upon the premises. No redemption was in fact made by any one.

Getman *v.* Getman.

The bill alleges that after the sheriff's sale, to wit, on the 12th July, 1825, Adam Getman, one of the defendants, called upon Margaret Getman, the wife of the judgment debtor and mother of the complainants, and represented to her that he and the other defendant, Christopher Getman, were willing to advance the money to Van Alstyne for his bid, to prevent the property from being taken from the children of the said George T. Getman, and that they would give time to repay the money within six years; that the said Margaret assented to the proposition, and communicated it to Van Alstyne, who also assented to it. That on the same day they paid the money to Van Alstyne, who assigned his bid in writing to them, and the sheriff, in October, 1826, conveyed the premises to the defendant, and the latter immediately took possession thereof. In April, 1827, the said Christopher conveyed his interest in the said premises to the defendant Adam, who thus became sole seised of the said premises. The bill also alleges that Robert Getman, one of the children of the judgment debtor, in 1830 released and conveyed all his right and title to the defendant, Adam Getman. That on the 10th April, 1828 or 1829, one of the complainants, Casper Getman, offered the said Adam to pay him all his fair demands on the premises and required him to release his title thereto, and he refused so to do. The bill contains divers other matters; but the foregoing is enough to raise the main question in the cause. The answer denies the agreement, and also interposes the statute of frauds, and insists that the agreement set forth relates to lands, and was not reduced to writing and signed by the party to be charged; and it also sets up the statute of limitations. A want of consideration, and a want of proper parties, and divers other objections were also raised on the argument of the cause. There was no consideration for the alleged agreement. It was a mere voluntary courtesy on the part of Adam Getman. It is not alleged that the complainants, by reason of this offer, were prevented from taking any steps to redeem. Indeed they had no right to redeem. The defendants derived no benefit from the complainants by the proposition, nor did they suffer any loss by the defendants' subsequent refusal to comply with it. Van

Getman v. Getman.

Alstyne had not purchased for the benefit of the complainants, nor is there any allegation that he intended to hold the premises in trust for them.

The agreement, it appears to me, is within the statute of frauds. (1 *R. L. of* 1813, 78, §§ 11, 12.) The bill seeks to enforce *a contract for some interest in lands ;* and this is not only within the letter but the spirit of the act. The answer not only denies the agreement, but insists on the statute. This court, therefore, cannot aid the complainants, unless they prove the agreement as alleged, by some adequate instrument in writing signed by the defendants or by their agent. None such has been proved, and it is not pretended that any such was made. The statute is founded in sound policy. There would be no security in the titles to real estate, if loose and idle conversations could, after a lapse of years, be used as evidence to change the ownership of lands. The mere oral expressions of a party are at all times, and under all circumstances, a dangerous species of evidence. (*See remarks of the Chancellor in Law* v. *Merrills,* 6 *Wend.* 277.) The application of the statute of frauds in analogous cases may be seen in *Moran* v. *Hays,* (1 *John. Ch. R.* 341 ;) *Steen* v. *Steen,* (5 *Id.* 11 ;) *Cozine* v. *Graham,* (2 *Paige,* 181 ;) *Ontario Bank* v. *Root,* (3 *Id.* 481 ;) 2 *Story's Eq.* 60, §§ 75, &c.

That a court of equity is as much bound by the statute of frauds as a court of law, will not, at this day, be controverted. Even before the statute of frauds, it was the constant practice of chancery to refuse a specific performance of an agreement relative to lands, unless it was reduced to writing, or confessed in the answer, or in part performed. (2 *Story's Eq.* 55, 56, § 753, *and the note.*) The present practice of the court is to decree a specific performance, when the contract is in *writing,* is *certain* and *fair in all its parts,* and is *for an adequate consideration,* and is capable of being performed ; and not otherwise. In no case will the court decree the performance of a mere parol contract which is within the statute, where the contract is denied by the answer, and the benefit of the statute is insisted on. The complainants, in all such cases, must be left to their remedies at law.

Getman v. Getman.

If we test this case by these general rules, we find no principle that will justify the granting the relief prayed for by this bill. There was no settling upon the terms of a contract which were certain and mutually obligatory; no adequate consideration, and no written engagement. It is not confessed, but denied by the answer. The complainants' argument to take this case out of the statute is ingenious but untenable. They insist that this is not an agreement for the sale of land, but an agreement to advance money and take a mere lien upon the land, giving the complainants time to repay it. But the agreement obviously contemplated that the title in fee might pass to the defendants before any redemption should be made. An effect therefore could not be given to the agreement without a deed from the defendants to the complainants. The whole structure of the bill in this case contemplates such conveyance. In any aspect of the case there was *an interest in lands* to be affected by the contract, not within the saving clause of the statute, and that is sufficient to bar the present remedy.

This case may be tested by a reference to the rights of the parties at law. If it was ever a case in which this court could entertain jurisdiction to decree the execution of the agreement, a court of law could have afforded relief by an action for damages. The two courts have concurrent jurisdiction, and although there are some cases where equity can grant relief when the remedy at law is gone, this is not one of that class of cases. Suppose an action at law were brought on this contract, who would be the plaintiffs? where would the cause of action be said to have accrued? what consideration would be set forth in the declaration? and what would be the rule of damages? It would be found, I apprehend, extremely difficult to shape a declaration that could be sustained, or to bring the case within any of the exceptions to the statute of limitations.

But the agreement, as set up in the bill, is not proved, even in substance. The answer is responsive to the bill, and denies the agreement. It must be proved by two witnesses; or if the answer is impeached, it must be proved by at least one witness. But the answer is supported, and must, I think, be taken as evi-

dence. Margaret Getman is the person to whom the defendant's proposition is said to have been made. Her testimony as to what passed between her and Adam is vague and unsatisfactory. She seems to suppose that her children had a right then to redeem the land; and that Adam wanted to redeem from Van Alstyne in order that she and her children should have six years or longer to redeem in. If she proves any agreement, and I think she does not, it is an agreement different from that in the bill. Robert Getman also proves the agreement to have been, to redeem for the benefit of Margaret Getman and her children. And he supposes they were to have six or seven years to redeem in. This also, vague as it is, varies from the contract set up. John P. Getman, another of the complainants' witnesses, and the creditor under whose judgment the land was sold, was examined as a witness to prove the agreement. He testifies to a conversation had between him and the defendant on the same day, and soon after the alleged bargain was made, as proved by Margaret and Robert. He testifies that Adam then told him that he and Christopher, if permitted to redeem, would give the boys, or any one of them, six or seven years to redeem the lands in. It is scarcely probable that this language would have been used, if he had a few hours before made the bargain set up in the bill, or the one sought to be proved by Margaret and Robert. He does not speak of an agreement already made, though he alludes to the willingness of the witness' mother and Margaret Getman and her family to have him redeem if he would give them six or seven years to redeem the lands in. He speaks rather of an executory offer made in favor of the boys.

There are other circumstances, acts and declarations of the defendant proved, tending to show his intentions to allow the family of Getman to redeem the lands. But all the evidence is too vague and uncertain to make it the basis of a decree against the answer, if there were no other objections to the complainants' case.

If the complainants cannot sustain this bill for a specific performance, it must be dismissed generally. They are not in a condition to redeem under the mortgages; as both of them were

older than the judgment under which the defendants' title accrues. It is immaterial to the complainants whether those mortgages were paid off or not. If Adam Getman has been paid the amount of the mortgages, the present complainants are not the parties to call him to account for it. The mortgages are prima facie extinguished by the union of the legal and equitable estate in the same person.

The statute of limitations would begin to run in the present case from the time the cause of action accrued. If there was a valid bargain and a tender made in 1828 or 1829, of the sum of money which would entitle the complainants to a recovery, the right of action, either at law or equity, would accrue then. With respect to such of the complainants as were not under disability at that time, this action is barred by the statute. It is scarcely necessary to discuss the other question, whether those who were infants are barred, since there are other grounds for the dismissal of the bill.

The bill must be dismissed, as to both defendants, with costs.

*H. Adams*, for appellants. The agreement to advance the money for Van Alstyne's bid, and to give the complainants six years to repay the money in, and redeem the land, was a valid agreement. It was not a contract or sale of the defendants land to the complainants; and therefore was not within the statute of frauds. (1 *R. L.* 78, §§ 11, 12.) It was an agreement to advance money, take a mere lien on the land, and give the complainants time to repay the money. It was like a mortgage, which is only a chattel interest in the land, and the freehold remains in the mortgagor. (*Coles* v. *Coles*, 15 *John. Rep.* 20.) Such an interest may be transferred without writing. (*Runyan* v. *Mersereau*, 11 *John.* 534.) A purchaser at a sheriff's sale has a mere lien on the premises, until the time of redemption is passed. (*Russell* v. *Payn*, 20 *John.* 3. 1 *Cowen*, 443, 501. 7 *Idem*, 540. 2 *Wend.* 507.) If an absolute interest, conveyed by deed absolute, may be controlled by parol conditions and qualifications, for a much stronger reason should the transfer of a qualified interest be subject to that rule. A conveyance abso-

lute in its terms, if intended to be a security for a debt, (and such intention may be proved by parol,) is a mortgage. (*Dunham* v. *Day, in Err.* 15 *John.* 555. *Clark* v. *Henry,* 2 *Cowen,* 324. *Lane* v. *Shears,* 1 *Wend.* 433. *Roach* v. *Cozine,* 9 *Id.* 227 *Henry* v. *Davis,* 7 *John. Ch. Rep.* 40. *Whittick* v. *Kane,* 1 *Paige,* 202.) An assignment of a land contract, as a security, is a mortgage. (*Brockway* v. *Wells,* 1 *Paige,* 617.) Mortgages are not considered conveyances of land, within the statute of frauds. (*Runyan* v. *Mersereau,* 11 *John.* 538.) If the view above taken, that the transaction in this case was an advance of money, and the certificate, with its incidental interests in the lands, was assigned to secure the repayment of the money, and the right of redemption reserved made the interest transferred to and held by defendants in the nature of a mortgage, then the statute of frauds does not apply. Nor does it apply, for the reason that the 11th section relates to contracts for the sale of lands, or interests in lands, which the contractor then has. Whereas the defendants here at the time of making this contract, had no pretended interest ; but by the contract they acquired merely a qualified interest, subject to the right of redemption. Nor is the 12th section believed to relate to the question. It provides that all declarations or creation of trusts or confidences in lands, &c., shall be manifested or proved by some writing signed by the party who is by law enabled to declare such trust, or by his last will and testament. This section obviously relates to the final disposition of lands in which the party making the disposition has, at the time, a subsisting fixed interest, and cannot be made to apply to an agreement by which the party acquires a qualified interest subject to the right of redemption. The statute of limitations does not apply. (2 *R. S.* 228, 9.) Section 49 applies to cases where courts of law and equity have concurrent jurisdiction. Section 51 applies to cases where the relief sought is only and solely on the ground of fraud ; in which case the bill should be filed within six years after the fraud is discovered. Section 52 applies to all other cases, not provided for in those two sections and the 50th section, and provides for the filing of the bill in ten years. Section 53 provides for disabilities; and being

---
Getman *v.* Getman.
---

married women is one of the cases of disability. (2 *R. S.* 223, § 16, *sub.* 4; 224, § 24.) The tender was well made, and in due time. The defendants' refusal to receive the money, dispensed with its being counted, and all further form. (*Mann* v. *Morris,* 7 *John.* 476 *and note* (*a*), *and cases there cited. Slingerland* v, *Morse,* 8 *Id.* 370.)

*D. Cady,* for respondents. I. The bill ought to be dismissed as against Christopher Getman, as he had no interest in the premises in question when the bill was filed, as appears from the bill and his answer. Nor does the bill show, that when he purchased of Van Alstyne he was informed of the offer made by Adam, as stated in the bill. The bill alleges that Christopher Getman sold his interest to Adam Getman; that was within six months after the sheriff's deed. The complainant never called upon Christopher for an account, nor asked him for a deed, nor offered to pay him any thing. There was no necessity that he should be a party, as he had no interest; and that fact was known to the complainants.

II. The complainants cannot be entitled to any relief on the ground of a contract; as there was no contract ever made between the complainants and the defendants. The bill alleges that the defendant A. Getman made an offer to the mother of the complainants, but no agreement was made between the complainants and the defendant Adam Getman. The offer stated in the bill, was for the benefit of the children of George T. Getman. The only witnesses who pretend to have heard any thing said by Adam Getman to the mother of the com plainants, were Margaret Getman and Robert Getman, and they both swear that the offer was for the mother and her children. Thus proving a different agreement, if any, from the one stated in the bill. According to the bill, the children were to have six years in which to repay the money. Margaret Getman swears that they, (herself and children) might have six years or longer to redeem the land in. Robert Getman swears that his mother and her children should have six or seven years, and if that was not enough, longer time would be given.

III. The complainants cannot be entitled to any relief on the ground of fraud: 1. Because no fraud has been proved; 2. Because the complainants never had any interest in, or title to, the premises in question; nor have they shown that they should have or could have acquired any title thereto had it not been for the acts or declarations of the defendant Adam Getman. The complainants, if they seek relief on the ground of fraud, must prove the fraud as stated in the bill. If they prove ten thousand other frauds it will not aid them. The acts as stated in the bill are the only acts put in issue by the pleadings, and the only acts which the defendants have been called on to answer. And they must be proved with as much certainty as if the complainants sought relief on the ground of contract by a specific performance. The offer stated in the bill is the only one put in issue, and the only one the proof of which can support the bill. It has been shown under the second point that the offer stated in the bill has not been proved. The complainants had no interest in the premises, nor right to redeem them under the sheriff's sale. They have not shown how they have been injured. (*Brown* v. *Lynch*, 1 *Paige*, 150.)

IV. If the complainants shall claim that the defendant Adam Getman holds the premises in question as their trustee, we insist that no trust is proved by any written evidence, without which no trust can be enforced in this court. (*R. L.* 1813, 78, 79, §§ 11, 12. *Moran* v. *Hays*, 1 *John. Ch.* 341. *Steere* v. *Steere*, 5 *Id.* 11. *Cozine* v. *Graham*, 2 *Paige*, 181. *Ontario Bank* v. *Root*, 3 *Id.* 481.)

V. If the complainants ever had any cause of action against the defendants, or either of them, their remedy is barred by the statute of limitations; whether their cause of action was founded upon contract, arose from fraud, or whether a court of law and equity have concurrent, or a court of equity exclusive, jurisdiction thereof. There was no contract made between the defendants and the complainants; but if any contract was made, it was made in July, 1825, and the bill was not filed until May, 1839, nearly 14 years after the offer was made. The sheriff's deed was given in October, 1826, and this bill was not filed until

more than twelve years after the deed was given, and the complainants then had a right of action, if ever ; and double the time necessary to bar their claim elapsed before the bill was filed. (2 *R. S.* 229, § 51:) If the complainants seek relief on the ground of fraud, they ought to have filed their bill within six years after the discovery of the fraud. The complainants allege that the defendant, Adam Getman, refused to convey in 1828 or 1829. This, according to their own showing, was ten · years before the bill was filed. (2 *R. S.* 224, § 18, *sub.* 4. *Idem*, 228, § 49.)

VI. The fact that two of the complainants were femes covert when the cause of action, if ever, arose, can at most only protect them from the statute of limitations, but it is denied that their coverture protects them. If the right of action was a joint right, and if the feme coverts and their husbands had refused to join, the other complainants might at any time have filed a bill and made the feme coverts and their husbands defendants, and if the right of action was several, then each of the complainants might have filed a bill at any time ; so that the coverture of two of the complainants can in no event protect the others. Again ; if any contract was made between the complainants and the defendants, it was made not with the feme coverts, who are incapable of contracting, but with their husbands, who were bound to act promptly.

VII. If the purchase by the defendant was in trust for Margaret Getman and her children, all of them ought to have been parties to· this suit. In this case the want of proper parties appears from the complainants' own proof. The bill sets out an offer for the benefit of the children of Margaret Getman. But the complainants prove an offer to purchase for the benefit of Margaret Getman and her children. This is good cause for dismissing the bill. Margaret Getman, according to her own evidence and that of Robert Getman, has an equal interest with any of the complainants. And if they can sustain this bill for an account and a conveyance for parcels of the premises, she can hereafter do the same thing for another part.

VIII. If the complainants and Robert Getman had any joint

claim against the defendants founded on contract or fraud, the release or conveyance made by Robert is a bar to complainants' suit. (*Fitch* v. *Forman*, 14 *John.* 175.) A release by one of two joint covenantees binds both. " They had a joint personal interest, and the release or modification by one would bind the other." " It is a general principle of law, that when two have a joint personal interest, the release of one binds the other." (3 *John. Rep.* 70.)

IX. If the offer, as stated in the bill, was made by Adam Getman and was binding on him, it was upon condition that the complainants should repay the money in six years, and that not having been done, all right under the offer was at an end. Although the offer contains no words of condition as stated in the bill, yet no one can suppose that Adam Getman was to be bound longer than six years, unless within that time the money was paid. It may be said that Casper Getman, one of the defendants, did in 1828 or 1829, offer to pay, and demanded an account. The bill does not state that he acted for the complainants. Should it be said that when the offer was made by Adam some of the complainants were femes covert and others were infants, then Casper did not act by their authority. Infants and feme coverts are bound by conditions as well as adults. (1 *Bac. Abr.* 401, *tit. Condition, letter F.*) If I covenant to convey to an infant or a feme covert if money be paid in six years, they, as well as an adult, must perform by the day.

X. If the complainants ever had a right to a conveyance from the defendants on the payment of any sum of money in pursuance of the offer made by the defendant, Adam Getman, they have, by neglecting to offer to pay and to ask for a conveyance, waived all right to the performance of the offer. (*Bullard* v. *Walker*, 3 *John. Cas.* 60. *Lane* v. *Dickerson*, 10 *Yerg.* 373.)

XI. The bill alleges that the defendant Adam Getman made the offer to their mother, for their benefit, but she had no power to accept the offer and thereby bind them. The complainants have not alleged in their bill that they, within a reasonable time, or that they ever, accepted the offer, and thereby became bound to pay. They cannot therefore be entitled to any relief. The

Getman *v.* Getman.

offer was made in July,. 1825, and the complainants never gave notice that they accepted the offer and would perform on their part, and they do not, in their bill, allege that they gave the defendants notice that they accepted the offer and would pay. Were they entitled to fourteen years in which to determine whether they would or would not accept the offer? In the case of *Bullard* v. *Walker*, the court held that a delay of four years, in performing, was evidence of waiver of a written contract. Mutual consent is necessary to the creation of a contract; and it becomes binding when a proposition is made on one side and accepted on the other. (2 *Kent's Com.* 476.) If a proposition be made, and no time limited for acceptance, it must be accepted within a reasonable time. The party has no right to accept at any time when he thinks fit. No one will say 14 years is. a reasonable time in which to accept a proposition, when by the terms of the proposition the contract was to be performed within six years. There was no acceptance of the offer by any one of the complainants, according to their own showing, until 1828 or 1829; and then Casper made an offer which we insist was not in the proper form.

THE CHANCELLOR. It is not pretended in this case that the defendants were to redeem the premises for the benefit of the judgment debtor, or of any person who had any right to redeem the same from the sheriff's sale. The substance of the agreement, as stated in the bill, was that the defendants were to sell and convey the right which they should obtain, by the purchase from Van Alstyne, to the children of the judgment debtor, at any time within six years, for the price they should pay for the same, with the interest thereon. But there was no agreement on the part of the children, or by the mother in their behalf, that they should take the property and pay the amount advanced, or even the interest thereon. The alleged agreement had therefore no consideration to support it, even if it had been reduced to writing.

Again; I see nothing in the alleged agreement, considered either as a contract, or a trust, to take it out of the operation of the statute of frauds which was in force in 1825. As the complainants

had no estate nor interest in the farm, the only way in which they could be benefitted by the purchase of the interest of Van Alstyne, by the defendants, was through the medium of a resulting trust; or under an agreement of the defendants to sell and convey the premises to them, for the amount of the purchase money paid to Van Alstyne, with interest thereon. But to constitute a resulting trust, to be established by parol evidence, it is necessary that the consideration money for the purchase should belong to the cestui que trust, or should be advanced by some other person as a loan or a gift to him. It was upon the ground that the purchase was in reality made by the Boyds, and that the money paid to the grantor was in fact loaned to them by the person to whom the legal title was conveyed, that this court sustained the resulting trust in the case of *Boyd* v. *McLean.* (1 *John. Ch. Rep.* 582.) Chancellor Kent says, in that case, " the ground upon which the claim of the plaintiffs rests, is that the $1500 which were paid to T. Colden in 1807, as the consideration for the purchase of the premises, were the moneys of the plaintiffs, procured from the defendant as a loan; and that the defendant took the deed in his own name, by agreement, and became thereby the trustee for the plaintiffs." In the present case, there is no pretence of a loan made by the defendants to the complainants; nor was there any negotiation for the loan of money. There was no agreement, by any one, to pay the money to the defendants in any event; but, as it is stated in the complainants' bill, it was a mere privilege of buying the premises, from the defendants, for the $371, and interest thereon, at any time within six years, if they should think proper to do so. In other words, the defendants agreed to sell the lands to the complainants at that price, subject to the previous incumbrances thereon, if they should elect to purchase the same. It was therefore a contract to sell land, or an interest in land, within the intent and meaning of the ninth section of the statute of frauds. (1 *R. S. of* 1813, *p.* 78.) This contract was also void, as being an agreement which was not to be performed within one year from the making thereof. If parol agreements of this kind, in favor of persons who had no previous interest in the land, can be sustained, no purchaser of

real estate will be safe; and all the benefits intended to be secured by the statute of frauds will be lost to the community. And the present case is also strongly illustrative of the danger of relying upon parol evidence to prove agreements of this description. For although several witnesses have testified upon the subject, no two of them agree in their statements as to what was said, or promised, or agreed to, by the defendants or either of them; and no one of them proves such an agreement or arrangement as these complainants have stated in their bill. Van Alstyne proves an agreement that one of the sons of the judgment debtor should be at liberty to redeem, for the benefit of the family; but within what time, or on what terms, he does not state. J. T. Getman, the judgment creditor and uncle of the complainants, says the defendant A. Getman told him if *the boys*, or any one of them, paid him the amount of the two mortgages and the amount of the bid, at any time within six years, he would give them the land. And this witness agreed that he would go to Van Alstyne and get him to sell the defendants his bid, if they would allow the boys to redeem on these terms. The mother of the complainants understood that all of her children were to have six years, or longer, to redeem the land in. Robert, the brother, testified that the defendant A. Getman applied to the mother for leave to redeem the land for her and her children, and to give them six or seven years to redeem the same; that he wanted C. Getman to go in with him; and she agreed to it, on condition that C. Getman should redeem it with him. And the defendant C. Getman, who was examined as a witness for his co-defendant, testified that Robert applied to him to assist him in redeeming the land, and he finally agreed to do so. But he says no time was fixed within which Robert was to pay the money, until after the arrangement with Van Alstyne was made. And then it was agreed that they should wait upon him as long as the person from whom they had borrowed the money would wait upon them; and that Robert subsequently declined paying the money when it became due, according to his agreement with the witness. It appears by the testimony of another witness also, who was the surety for the money raised to make the ten-

der, that Caspar Getman, one of the complainants, then under-stood that the bargain had been made with Robert; and that the money was to be tendered to enable him to bring the suit. This was previous to 1830, when the defendant A. Getman compromised the claim of Robert under the agreement, and paid him a considerable sum to prevent the necessity of a litigation with him. Independent of the legal objection to parol evidence to prove the alleged contract with these complainants, the testimony does not establish such an agreement as is set up in this bill; and is wholly insufficient to overthrow the positive denial in the answer.

These several objections being fatal to the claim of the complainants, it is unnecessary for me to examine the question whether their rights, if they ever had any, were barred by the statute of limitations. The decree appealed from is not erroneous; and it must be affirmed with costs.